UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


| | |
|---|---|
| HUGH ANDREW NICELY ] | |
|     Petitioner, ] | |
| ] | |
| v. ] | No. 3:08-1126 |
| ] | Judge Trauger/Bryant |
| DAVID MILLS, WARDEN ] | |
|     Respondent. ] | |

**To: Honorable Aleta A. Trauger, District Judge**

### R E P O R T   A N D   R E C O M M E N D A T I O N

By an order (Docket Entry No.5) entered December 5, 2008, the Court referred this action to the undersigned " for case management, decision on all pretrial, nondispositive motions and report and recommendation on all dispositive motions under 28 U.S.C. § 636(b)(1) and to conduct any necessary proceedings under Rule 72, Fed.R.Civ.P."

Presently pending before the Court are the respondent's Answer (Docket Entry No.20) to the Petition (Docket Entry No.1) for writ of habeas corpus, and the petitioner's Reply (Docket Entry No.23) to the Answer. The undersigned has reviewed these pleadings as well as the expanded record and respectfully recommends, for the reasons stated below, that the Petition lacks merit and that this action should be dismissed.

1

## I. BACKGROUND

The petitioner is an inmate at the Morgan County Correctional Complex in Wartburg, Tennessee. He brings this action through counsel pursuant to 28 U.S.C. § 2254 against David Mills, Warden of the facility, seeking a writ of habeas corpus.

In October, 1992, an indictment was returned in Robertson County charging the petitioner with aggravated rape (7 counts), aggravated sexual battery and the rape of a child. Docket Entry No.15-9 at pgs.2-5.

A jury was unable to reach a verdict. As a consequence, the trial judge was forced to declare a mistrial. Docket Entry No.15-10 at pgs.59,234. Following a second trial, the jury returned a verdict of guilty on all counts. Docket Entry No.15-3 at pgs.137-145. For his crimes, the petitioner received an effective sentence of fifty three (53) years in prison. Docket Entry No.15-2 at pgs. 18-26.[1]

On direct appeal, the Tennessee Court of Criminal Appeals reversed and remanded four of the aggravated rape convictions. The remaining convictions, however, were affirmed and the petitioner's effective sentence remained at fifty three years in prison.[2] Docket

---

[1] Prior to his second trial, the petitioner rejected a plea offer of one year in jail to be followed by a year of supervised probation. Docket Entry No.15-12 at pg.112.

[2] The State chose not to re-try the petitioner on the four aggravated rape charges that had been remanded back to the trial court. Docket Entry No.15-10 at pg.131.

Entry No.15-10 at pgs.43-52. The Tennessee Supreme Court later denied petitioner's Rule 11 application for further review. Docket Entry No.15-10 at pg.99.

The petitioner then filed an application for state post-conviction relief. Docket Entry No.15-12 at pgs.4-12. Following an amendment of the application and an evidentiary hearing, the trial judge granted the petitioner's request for relief upon a finding that defense counsel had been ineffective. Docket Entry No.15-10 at pgs.233-272. On appeal, though, the Tennessee Court of Criminal Appeals reversed the trial judge and dismissed the petitioner's application for post-conviction relief. *Id.* at pgs.152-169. The Tennessee Supreme Court once again rejected the petitioner's application for further review.

## II. PROCEDURAL HISTORY

On November 24, 2008, the petitioner initiated this action with the filing of a habeas corpus petition (Docket Entry No.1). The petition presents six claims for relief. These claims include

> (1) the petitioner was denied the effective assistance of counsel when:
>     a) his attorney failed to obtain the services of an expert to refute the prosecution's medical evidence;
>     b) counsel failed to disclose a conflict of interest;
>     c) counsel failed to object to inflammatory and unduly prejudicial evidence; and
>     d) counsel wrongly elicited testimony relating to the sexual orientation of

3

> the petitioner's father.[3]
>
>> (2) the trial judge committed error when he allowed the prosecution an excessive number of leading questions during the examination of the victim.
>>
>> (3) error was committed when the trial judge allowed the admission of an interview (Docket Entry No.15-9 at pgs.65-77) between the victim and a certified Family Nurse Practitioner (Julie Rosof).

Docket Entry No.1 at pgs.50-65.

Upon preliminary review of the petition, it was determined that the petitioner's claims were not facially frivolous. Accordingly, the undersigned entered an order (Docket Entry No.7) directing the respondent to file an answer, plead or otherwise respond to the petition. Rule 4, Rules - - - § 2254 Cases.

Presently pending before the Court is respondent's Answer (Docket Entry No.20) and the petitioner's Reply (Docket Entry No.23) to the Answer. Having carefully reviewed these pleadings and the expanded record, it does not appear that an evidentiary hearing is needed in this matter. *see* Smith v. United States, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is entitled to no relief).

### III. ANALYSIS OF THE CLAIMS

**A) Procedurally Defaulted Claims**

---

[3] At trial, the petitioner was represented by Larry Wilks, a member of the Robertson County Bar.

4

A petition for writ of habeas corpus will not be considered unless the petitioner has first exhausted all available state court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1)(A); Hamm v. Saffle, 300 F.3d 1213,1216 (6th Cir.2002). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine that promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. Granberry v. Greer, 107 S.Ct. 1671,1674-1675 (1987). Thus, as a condition precedent to seeking federal habeas corpus relief, each of the petitioner's claims must have been fairly presented to the state courts. Rhines v. Weber, 544 U.S. 269,274 (2005). Once the petitioner's federal claims have been presented to the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider them. O'Sullivan v. Boerckel, 526 U.S. 838,842 (1999).[4]

According to the record, three of the petitioner's claims were never raised or fully exhausted in the state courts on either direct appeal or during post-conviction. These claims include the ineffectiveness of counsel for failing to object to inflammatory and unduly prejudicial evidence (Claim No.1c), the ineffectiveness

---

[4] In Tennessee, a petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Adams v. Holland, 324 F.3d 838 (6th Cir.2003).

5

of counsel for eliciting testimony relating to the sexual orientation of the petitioner's father (Claim No.1d), and the admission into evidence of an interview between a certified Family Nurse Practitioner and the victim (Claim No.3). *See* Docket Entry No.15-10 at pgs.43-52 (direct appeal); *Id*. at pgs.152-169 (post-conviction appeal).[5]

To properly satisfy the exhaustion requirement, a claim must be fairly presented to every level of the state court system for consideration. Doctor v. Walters, 96 F.3d 675, 678 (3rd Cir. 1996). In the case of these claims, the petitioner has failed to do so. At this late date, however, it appears that state court remedies for these claims are no longer available. Tenn. Code Ann. § 40-30-102(a) and (c). Thus, by way of his procedural default, the petitioner has technically met the exhaustion requirement with respect to these claims. Alley v. Bell, 307 F.3d 380,385 (6th Cir.2002)(if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas corpus review).

The exhaustion of a claim via procedural default does not, however, automatically entitle a habeas petitioner to federal review of that claim. To prevent a federal habeas petitioner from

---

[5] On direct appeal, the petitioner did allege that it was error for the prosecutor to question him about his father's sexual orientation. This error, however, was not attributed to the ineffectiveness of defense counsel. Docket Entry No.15-12 at pgs.128-129.

circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of federal constitutional issues forfeits the right to federal review of those issues, absent cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violations. Gray v. Netherland, 518 U.S. 152, 162 (1996).

A habeas petitioner can not rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, he must present affirmative evidence or argument as to the precise cause and prejudice produced. Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir.2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with his ability to comply with the state procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected with constitutional error. United States v. Frady, 456 U.S. 152, 170-72 (1982).

In this regard, the petitioner has shown neither cause for his failure to properly exhaust these claims nor any prejudice arising from them. Therefore, his procedural default of these claims is unexcused and will not support an award of habeas corpus relief.

7

**B) Fully Exhausted Claims**

On direct appeal, the petitioner fully exhausted his claim that he was denied a fair trial when the prosecutor was allowed to use an excessive number of leading questions during the examination of the victim (Claim No.2). Docket Entry No.15-12 at pgs.127-128. His remaining claims, i.e., the ineffectiveness of counsel for failing to obtain the services of a medical expert (Claim No.1a) and the ineffectiveness of counsel brought about by a conflict of interest (Claim No.1b), were fully addressed in the state courts during the petitioner's post-conviction proceeding. Docket Entry No.15-10 at pgs.126-150.

When a federal habeas corpus claim has been adjudicated on the merits in state court, the state court adjudication will not be disturbed unless it resulted in a decision contrary to clearly established federal law or involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); Nevers v. Killinger, 169 F.3d 352, 357 (6th Cir.1999). In order for a state adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. In order to obtain the writ for an "unreasonable application" of federal law, the petitioner must show that the state court identified the correct

8

governing legal principle involved but unreasonably applied that principle to the facts of the case. Williams v. Taylor, 120 S.Ct. 1495,1523 (2000). In short, state court judgments must be upheld unless, after the closest examination of the state court judgment, the Court is firmly convinced that a federal constitutional right has been violated. *Id.*, at 120 S.Ct. 1511.

**1) Excessive Use of Leading Questions**

The petitioner claims that the trial judge erred by allowing the prosecutor to use an excessive number of leading questions during the direct examination of the victim (Claim No.2).

The use of leading questions during the direct examination of a witness falls within the sound discretion of the trial court. United States v. Shoupe, 548 F.2d 636,641 (6th Cir.1977). Generally, abuse of discretion is not found in the absence of prejudice or clear injustice to the defendant. United States v. Durham, 319 F.2d 590,592 (4th Cir.1963).

At the time she gave her testimony, the victim was eleven years old. Docket Entry No.15-5 at pg.59. She testified that the petitioner, her stepfather, had been raping her on a regular basis since she was six years old. Often during her testimony, the victim was unresponsive to questioning. *Id.* At pgs.59-154. As a consequence, the trial judge gave both prosecutor and defense counsel great latitude in the use of leading questions.

Leading questions have generally been permitted to evoke

9

testimony from minor sexual abuse victims. <u>Jordan v. Hurley</u>, 397 F.3d 360,363 (6th Cir.2005); *see also* <u>United States v. Demarrias</u>, 876 F.2d 674,678 (8th Cir.1989). In this case, the transcript of the victim's testimony does not suggest that the leading questions posed to her were so excessive as to render the petitioner's trial unfair. Therefore, this claim has no merit.

**2) Ineffective Assistance of Counsel**

The petitioner alleges that trial counsel was ineffective for failing to obtain the services of an expert to refute the prosecution's medical evidence (Claim No.1a). He also claims that counsel was deficient for failing to disclose a conflict of interest (Claim No.1b).

The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970). To establish a violation of this right, the petitioner bears the burden of pleading and proving that his attorney's performance was in some way deficient and that the defense was so prejudiced by the deficiency as to render the trial unfair and the result unreliable. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). When considering such a claim, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 466 U.S. 690.

The prosecution's proof against the petitioner consisted, for

10

the most part, of the victim's testimony of abuse, Docket Entry No.15-5 at pgs.59-154, supported by the testimony of Julie Rosof, a Family Nurse Practitioner. Ms. Rosof had examined the victim and found that there was an absence of some hymenal tissue, indicating penetration of the vaginal region and sexual abuse. Docket Entry No.15-6 at pgs.96,106-107.

The defense offered the testimony of a clinical psychologist (Dr. Eric Ingam) who had examined the petitioner and concluded that he displayed none of the traits common to a pedophile. Docket Entry No.15-7 at pgs.94-98. A physician, Dr. Stephen Miniat, also testified that he had reviewed the documentation provided by Ms. Rosof and found it to be sloppy. *Id.* at pgs.14-18. Dr. Miniat examined the petitioner and determined that, given the size of his genitalia, it was "not medically possible" for the petitioner to have been sexually abusing the victim in the manner described by her over an extended period of time. *Id.* at pg.21.

During his post-conviction evidentiary hearing, the petitioner presented the testimony of another physician, Dr. Matthew Seibel, who disputed the finding that Ms. Rosof had made of an absence of hymenal tissue. Docket Entry No.15-13 at pg.57. On the basis of this testimony, the petitioner claims that his attorney had been ineffective for failing to procure the services of an expert who would have disputed the prosecution's medical proof.

The prosecution's medical proof showed penetration of the

11

victim's vaginal region consistent with a finding of sexual abuse. During the course of his testimony, Dr. Seibel, admitted that the photos he examined supported a finding that someone had penetrated the victim's vaginal region. *Id.* at pg.71. He further stated that he agreed with the diagnosis of sexual abuse. *Id.* at pg.70. Defense counsel enlisted the aid of a physician and a clinical psychologist to refute the prosecution's proof. Petitioner's family had no funds available to retain another expert. Docket Entry No.15-14 at pgs.39-40. Dr. Seibel's testimony does little to suggest that the jury would have rejected the prosecution's medical evidence. Thus, the petitioner has failed to carry his burden of showing that counsel was deficient and that the petitioner was prejudiced by the failure to obtain additional medical testimony in support of the petitioner's defense.

The officer assigned to investigate the allegations against the petitioner was Joanne Gregory, a member of the Springfield, Tennessee Police Department. Almost three years prior to the petitioner's first trial, defense counsel, in his role as the City Attorney for Springfield, was nominally involved in the defense of a lawsuit alleging that Officer Gregory had touched a suspect in an inappropriate manner. <u>Timberlake, et al. v. Gregory, et al.</u>, No.3:89-1003 (M.D. Tenn.)(Nixon, S.J., presiding). The petitioner learned of this lawsuit during the discussion of a motion in limine, Docket Entry No.15-17 at pgs.14-23, and claims that counsel

12

was suffering from a conflict of interest that impeded his ability to properly defend the petitioner.

When the petitioner learned of counsel's involvement with Officer Gregory three years earlier, he did not raise a contemporaneous objection. In order to establish a Sixth Amendment violation, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Cuyler v. Sullivan, 446 U.S. 335,348 (1980).

Here, defense counsel testified at the post-conviction evidentiary hearing that he did not actually work on the Timberlake case. As City Attorney, he simply forwarded process to the city's insurance carrier who retained a law firm in Nashville to conduct a defense of the action. Docket Entry No.15-14 at pg.43. Defense counsel represented the City of Springfield in name but did not represent Officer Gregory individually. *Id.* at pg.45. He further testified that he had no independent recollection of learning anything from Officer Gregory that might be deemed confidential. *Id.* at pg.81. The petitioner has failed to show in what way an actual conflict of interest arose from the Timberlake case. Consequently, this claim also lacks merit.

Having independently reviewed the record, the undersigned finds that the state court judgment with respect to petitioner's fully exhausted claims was neither contrary to clearly established

13

federal law nor did it involve an unreasonable application of federal law in light of the evidence. The state courts applied the proper legal analysis when addressing these claims and the petitioner has offered no clear and convincing evidence to refute the findings of fact made by the state courts. 28 U.S.C. § 2254(e)(1).

**R E C O M M E N D A T I O N**

For the reasons discussed above, the undersigned respectfully RECOMMENDS that the instant Petition for writ of habeas corpus lacks merit and should be DISMISSED. Rule 8(b), Rules - - - § 2254 Cases.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of receipt of this notice and must state with particularity the specific portions of the Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See* Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

*s/ John S. Bryant*
John S. Bryant
United States Magistrate Judge