**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **HUGH ANDREW NICELY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:08-cv-1126** |
| | ) | **Judge Trauger** |
| **DAVID MILLS, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM

Pending before the court are the petitioner's Objections (Docket Nos. 29 and 30) to the

Report & Recommendation ("R&R") issued by Magistrate Judge Bryant on March 28, 2011,

which recommended dismissing the petitioner's Section 2254 petition for a writ of *habeas*

*corpus*. (Docket No. 28.) The respondent has filed a response to the petitioner's Objections.

(Docket No. 37.) For the reasons discussed below, the court will overrule the petitioner's

objections and dismiss this case.

## BACKGROUND

As recounted in the briefing here and in the R&R, the petitioner, Hugh Andrew Nicely, is

presently incarcerated at the Morgan County Correctional Complex in Wartburg, Tennessee. The

petitioner was indicted in October 1992 on seven counts related to the allegations of his minor

stepdaughter of repeated aggravated rape and sexual battery, beginning when she was six and ending

with her report of abuse to daycare officials in August 1992, when she was ten.

The petitioner's 1993 Robertson County, Tennessee trial ended in a mistrial when the jury

was unable to reach a verdict. The 1994 trial, however, ended in convictions on all counts, and the petitioner received an effective sentence of 53 years. It is undisputed that the primary difference between the two trials is that, at the second trial, detailed photographs of the victim's vagina and anus (taken shortly after she first alleged abuse in August 1992) were presented to the jury. Using those pictures, Nurse Practitioner Julie Rosof, who has conducted "thousands" of examinations of alleged victims of sexual abuse, testified that there was an abnormal absence of hymenal tissue at the "six o'clock position," of the victim's vaginal opening which is "consistent with" penetration. (*See* Docket No. 15 Ex. 17 at 335.) On direct appeal, the Tennessee Court of Criminal Appeals reversed and remanded (on technical grounds) the convictions on four counts, but, as the ultimate sentence was unaffected, the petitioner was never re-tried on those counts. (Docket No. 1 Ex. 1 at 5.) The Tennessee Supreme Court denied the petitioner's application for further review.

On collateral review, in an August 30, 2006 ruling, the state court judge who had presided over both trials determined, following an evidentiary hearing, that the petitioner had received ineffective assistance of counsel and ordered a new trial. (*Id*. at 1.) Specifically, the court determined that it was ineffective assistance for the petitioner's trial counsel, Larry Wilks, not to have engaged the services of an expert along the lines of Dr. Matthew Seibel. (*See id.* at 26-31.) Dr. Seibel is undisputably an expert in injuries resulting from child abuse and neglect. (*Id*. at 5.) He was retained by the petitioner in conjunction with the state collateral review proceedings. Based upon the photos of Nurse Rosof's examination of the victim, he testified at the evidentiary hearing that there was no absence of hymenal tissue at the "six o'clock" position, although there was an "abnormality" at that position. (Docket No. 15 Ex. 13 at 41.)

In finding the deficient performance and prejudice necessary to a determination of ineffective assistance, the trial court recognized that Wilks had engaged in "vigorous representation" on behalf of his client but also determined that the failure to call an expert such as Dr. Seibel to challenge Rosof's testimony was critical, because interpretation of the photos "went to the heart of the case," as shown by the fact that the second trial (with the photos) ended in a conviction, and the first trial (without the photos) did not. (*Id.* at 29-30.) Therefore, the court found that "trial counsel should have presented expert testimony" and that there was "sufficient prejudice to warrant relief." (*Id.* at 30-31.) While the trial court ordered a new trial based on ineffective assistance as to calling the expert, it rejected the petitioner's assorted other claims for relief. (*Id.* at 31-39.)

On February 22, 2008, the Tennessee Court of Criminal Appeals reversed the trial court's decision ordering a new trial. (Docket No. 1 Ex. 3.) The appeals court focused on Seibel's testimony during the evidentiary hearing that, given the oral history offered by the victim to police and medical staff, he would concur with the *medical diagnosis* of sexual abuse. (*Id*. at 9-11.) Also, Seibel had conceded that, while the hymen was intact, he did have "questions" about potential irregularities at the "six o'clock" position. (*Id*.) In sum, Seibel could not have rebutted the prosecution on the "ultimate issue" of penetration. (*Id*.)

The Tennessee appeals court then went on to speculate that if, at trial, Seibel had been asked about whether his interpretation of the pictures allowed for the possibility of penetration by a large penis (similar to the petitioner's), he might have undercut the defense theory of "impossibility," that is, Seibel could have suggested that penetration by a large penis was still possible based upon the pictures. (*Id*. at 11.) In light of all of this, the appeals court concluded that the petitioner had not

shown ineffective assistance, and the court went on to reject the petitioner's other claims for relief. (*Id*. at 11-18.) Following the appeals court ruling, the Tennessee Supreme Court again rejected the petitioner's application for further review.

As recounted in the R&R, the petitioner instituted this action on November 24, 2008, asserting six grounds for relief – that is, four claims of ineffective assistance of counsel and claims that he was denied a fair trial (1) when the trial judge allowed an "excessive number of leading questions" to be asked during the direct examination of the victim and (2) when the trial judge allowed the admission of an interview between the victim and Rosof. (See Docket No. 28 at 3-4.) On December 5, 2008, the court referred this matter to Magistrate Judge Bryant. (Docket No. 5.)

On March 28, 2011, following briefing on the merits of the Petition, Magistrate Judge Bryant recommended that the Petition be dismissed without the benefit of an evidentiary hearing, as three of petitioners's claims were "procedurally defaulted," and the "fully exhausted claims" were without merit. (Docket No. 28 at 3-12.) The petitioner timely filed Objections to the R&R, which have been fully briefed.

## I.      Standard of Review

Under Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the court is required to make a *de novo* determination of any part of the Magistrate Judge's R&R to which specific objection has been made. The district judge may accept, reject, or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

## II.      The R&R and The Objections

## A.    Procedurally Defaulted Claims

The Magistrate Judge recommended that three of the petitioner's claims, that is, "ineffectiveness of counsel for failing to object to inflammatory and unduly prejudicial evidence . . . ineffectiveness of counsel for eliciting testimony relating to the sexual orientation of the petitioner's father . . . and the admission into evidence of an interview between [Rosof] and the victim" be dismissed as procedurally defaulted. (Docket No. 28 at 5-6.)  Citing to the fact that these arguments were not addressed in the state court opinions on direct and post-conviction appeal, the Magistrate Judge concluded that these claims were not "fairly presented to every level of the state court system," and, therefore, the claims were not properly exhausted for purposes of Section 2254 review.  (*Id.* citing 28 U.S.C. § 2254(b)(1)(A); *Doctor v. Walters*, 96 F.3d 675, 678 (3rd Cir. 1996)).

As these claims would now be procedurally barred under state law, the Magistrate Judge went on to determine whether the petitioner could still seek federal review by sufficiently showing "cause for the noncompliance [with state procedural rules and] . . . actual prejudice resulting from the alleged constitutional violations." (*Id.* at 7 citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). The Magistrate Judge determined that the petitioner could show neither cause nor prejudice, and, therefore, he concluded that the "procedural default of these claims is unexcused and will not support an award of habeas corpus relief." (*Id.*)

In objecting to the R&R, the petitioner filed an "itemized" list of objections and then filed a lengthy Memorandum challenging the Magistrate Judge's ruling on the Seibel testimony (discussed below). (Docket Nos. 29-30.)  Therefore, the procedural default objections get limited treatment from the petitioner. (Docket No. 29 at 7.)   In two paragraphs, with no citation to the

voluminous record, the petitioner maintains that he raised the "inflammatory and unduly prejudicial evidence" and "homosexual" objections "in connection with his post-conviction petition," but the Tennessee courts neglected to rule on the matters. (*Id.*) In response, the respondent, also choosing not to cite to the record, states that the petitioner did not raise these issues on state review. (Docket No. 37 at 10.)

The petitioner has not demonstrated to this court that the Magistrate Judge's findings of procedural default are incorrect. Indeed, the petitioner does not substantively challenge the procedural default finding as to the interview between Rosof and the victim, and he makes no effort to demonstrate that he "fairly presented" these claims to every level of the state court for consideration, as required. *Gray*, 518 U.S. at 161.

Moreover, this court may deny the claim on the merits, notwithstanding the dispute about procedural default. 28 U.S.C. § 2254(b)(2). To prevail on a claim of ineffective assistance of counsel, the petitioner must show deficient performance and prejudice. *Bell v. Cone*, 535 U.S. 685, 694-95 (2002). Trial counsel's performance is deficient when it falls "below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The prejudice element requires that the petitioner show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The determinative issue is not whether petitioner's counsel was ineffective but whether he was so throughly ineffective that defeat was snatched from the jaws of victory." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (internal quotation omitted).

The court has reviewed the entire transcript of the 1994 trial and finds no suggestion that, in raising the prospect of the petitioner's father's sexual orientation or in supposedly failing to object at certain points, the petitioner received deficient performance or was prejudiced. Consistent with the findings of the Tennessee courts, Wilks's representation during the entire (exceptionally challenging) trial was vigorous, and the challenged issues, such as the homosexuality matter, were very minor in the context of the entire record. The petitioner's objections here are without merit, and these claims will be dismissed.

### B. Fully Exhausted Claims

The Magistrate Judge concluded that the remaining claims, that the petitioner "was denied a fair trial when the prosecutor was allowed to use an excessive number of leading questions during the examination of the victim," and that Wilks was ineffective due to a conflict of interest and "for failing to obtain the services of a medical expert," were fully exhausted and ripe for federal review. (Docket No. 28 at 8.)

As the Magistrate Judge recognized, when a Section 2254 claim has been adjudicated on the merits in state court, the state court adjudication will not be disturbed on federal review unless it resulted in a decision contrary to clearly established federal law or involved an unreasonable application of federal law in light of the evidence. (*Id.* citing 28 U.S.C. § 2254(d)). The primary issue here is whether the state court's application of federal law was unreasonable. An application is only unreasonable if "fairminded jurists" would all agree that the state court's ultimate determination was incorrect. *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Since the Magistrate Judge issued his opinion, the Supreme Court has held that the federal court must make

this reasonableness determination based only upon the evidence that was before the state court. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).[1]

## I.       Leading questions

The petitioner argues here that the trial judge allowed an excessive number of leading questions during the direct examination of the victim. (Docket No. 1 at 64.) The Magistrate Judge rejected this claim, noting that, given the nature of the victim, "the trial judge gave both prosecutor and defense counsel great latitude in the use of leading questions." (Docket No. 28 at 9.) The Magistrate Judge went on to note that allowing the use of leading questions is generally a discretionary matter for the trial court and such questions are often necessary in sexual abuse cases with minor victims. (*Id*. at 9-10 *citing e.g. Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2005)). The Magistrate Judge concluded that "the transcript of the victim's testimony does not suggest that the leading questions posed to her were so excessive as to render the petitioner's trial unfair." (*Id*. at 10.)

In objecting to this conclusion, the petitioner states that the vast majority of answers from the victim on direct and re-direct examination were one-word or "yes" or "no" answers, which demonstrates excessive leading and rendered the proceeding unfair. (Docket No. 29 at 8.) The court has reviewed the victim's testimony, and, while there were a great number of leading questions, this was simply inevitable, given the nature of the allegations and the nature of the victim. The record

---

[1]Therefore, Dr. Seibel's November 21, 2008 letter (Docket No. 1 Ex. 4) to petitioner's counsel [which, in this court's view, over-emphasizes the importance of the examination photos to the conviction in the second trial and downplays the fact that he testified that, had he been called to testify at the second trial, he "would have agreed with the diagnosis of child sexual abuse" (Docket No. 15 Ex. 13 at 69)] has no bearing on the court's review here.

reflects that the trial judge and counsel simply did the best that they could under difficult circumstances to elicit her allegations while not having the state's lawyer testify. (Docket No. 19 Ex. 20 at 585-658.) Moreover, the victim's testimony on direct examination was hardly all "yes" and "no"; she clearly explained that the petitioner had warned her to "run" if he ever tried to touch her, and she clearly described specific instances of sexual misconduct without excessive leading. (*Id.* at 595-600.) The court concurs with the Magistrate Judge's finding that this claim is without merit.

### ii.    Conflict of interest

The petitioner maintains that Wilks had an actual conflict of interest because, a few years prior to the second trial, while he was City Attorney for Springfield, Tennessee, he represented Joanne Gregory (the investigating officer in this matter who testified for the prosecution at the 1994 trial) against allegations that she had improperly touched a suspect during a search. (Docket No. 1 at 40-42, 57-60.) The petitioner maintains that he was not advised of this conflict until after the second trial had commenced (although he did not object at trial) and that the conflict impeded Wilks's ability to represent him. (*Id.*)

The Magistrate Judge recommended dismissing this claim, noting that, where no objection is made during trial, the petitioner must demonstrate "an actual conflict of interest [that] adversely affected his lawyer's performance." (Docket No. 28 at 13 citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). The Magistrate Judge found the petitioner's showing to be lacking, particularly given Wilks's testimony during the evidentiary hearing that he only represented the City (not Gregory, individually) and that the "leg work" on the case was conducted by a firm retained by the city's

insurance carrier.  (*Id*. at 13.)

In objecting to this conclusion, the petitioner maintains that the Magistrate Judge ignored the fact that the petitioner was not informed of this conflict prior to trial, never waived the conflict, and that, during the trial, the discussion of this conflict on the record suggested that Wilks had represented Gregory in the previous lawsuit and that Gregory had disclosed confidences to Wilks in the course of that representation.  (Docket No. 29 at 5-7.)

The Tennessee appeals court's determination that the petitioner's rights were not violated by any alleged conflict was not unreasonable.  Indeed, given the lack of connection between the two cases and that the claims against Gregory were settled years before her testimony in this case, the appeals court aptly recognized that, "it appears that the petitioner's complaint is based solely upon the fact that Gregory was both a witness at his trial as well as a defendant in the civil matter.  There is no claim, and no proof presented, that trial counsel was not zealous in his representation of the petitioner as well as his cross-examination of Gregory."  (Docket No. 1 Ex. 3 at 16.)   Indeed, the court has reviewed the trial transcript and finds no suggestion that Wilks's representation was in any way hindered by a conflict of interest.  The court concurs with the Magistrate Judge that this claim is without merit.

### iii.    Failure to retain expert

In finding that the petitioner did not have a viable Section 2254 claim for his counsel's failure to obtain an expert such as Dr. Seibel, the Magistrate Judge briefly discussed some of the proof offered at trial; that is, the victim offered her detailed testimony regarding abuse, Rosof testified that her examination supported a conclusion that the victim had been penetrated and

sexually abused, and the defense offered testimony from a clinical psychologist, who stated that the petitioner did not fit the profile of a pedophile, and from a physician, who stated that, given the petitioner's abnormally large genitalia, "it was not medically possible for the petitioner to have been sexually abusing the victim in the manner described by her over an extended period of time." (Docket No. 28 at 11.)  After providing this synopsis, the Magistrate Judge went on to cite Seibel's testimony at the evidentiary hearing, in which he stated that he would have agreed with the *medical diagnosis* of sexual abuse.  (*Id.* at 12.)

Applying *Strickland*, the Magistrate Judge found no deficient performance because "Defense counsel enlisted the aid of a physician and a clinical psychologist to refute the prosecution's proof" and because, as Wilks testified during the evidentiary hearing,  "Petitioner's family had no funds available to retain another expert."  (*Id*.)  The Magistrate Judge found no prejudice because "Dr. Seibel's testimony does little to suggest that the jury would have rejected the prosecution's medical evidence."  (*Id*.)

In his lengthy objections on this issue, the petitioner maintains that the issue of whether the hymen was torn was a crucial issue at trial and that the photographs of the supposedly torn hymen were "the centerpiece of the state's case." (Docket No. 30 at 4.)  This fact, the petitioner maintains, was recognized on collateral review by the trial judge who had overseen both trials but was simply ignored by the state appeals court, which lacked the insight into the two trials necessary to see the difference that the photographs and Rosof's explanation of them made.  (*Id*. at 4-5.)

The petitioner goes on to argue that both the state appeals court and the Magistrate Judge misinterpreted Seibel's testimony.  (*Id.* at 6-7.)  That is, from a medical perspective, Seibel would

have agreed with the finding of sexual abuse, in light of the oral history provided by the victim and the fact that, even in cases of abuse, the hymen might well appear normal; however, from a legal perspective, he would have directly challenged the State's proof that the hymen was torn and raised key credibility questions for the jury regarding the competency of the State's witnesses on this point. (*Id*. at 7-9.) The petitioner also quotes at length from the trial, including the prosecutor's statement during opening argument that the victim's credibility might be challenged, but she did not "dream away" her hymen, to further underscore that the damage to the hymen was a central issue at trial, in both argument and during Rosof's testimony. (*Id*. at 10-17.) The petitioner also notes that, in closing, the prosecutor argued that the defendant was unable to find a "real expert," to challenge the hymen evidence. (*Id*. at 17.)

The petitioner concedes that, during his collateral review hearing testimony, Seibel testified that the "six o'clock position" looked a "little abnormal" in some pictures or had some "irregularities" in others, but he clearly testified that the hymen was intact, all the way around. (*Id*. at 18-19.) In light of this clearly beneficial testimony, the petitioner argues that the appeals court, which did not have the benefit of presiding over the trials and engaged in unfounded speculation regarding Seibel's potential testimony on genitalia size, made an obvious misapplication of the *Strickland* standard when it determined that Wilks's representation was not ineffective for failing to retain an expert such as Seibel. (Docket No. 30 at 25-38.)[2]

---

[2]The petitioner also cites *Byrd v. Trombley*, 352 Fed. Appx. 6 (6th Cir. 2009) as a case with "strikingly similar" facts. (*Id*. at 29.) *Byrd* also involved an allegation of sexual misconduct by a stepfather, an alleged hymen injury, and a Section 2254 claim that counsel was ineffective for not finding expert testimony to challenge the allegations of injury to the hymen. 352 Fed. Appx. at 6-10. It is worth noting that, while the district court found ineffective assistance on the expert issue, the Sixth Circuit did not reach that specific claim of ineffective

The petitioner maintains that the R&R also misconstrues Seibel's testimony on the medical diagnosis issue and otherwise "conflates medical and legal issues." (Docket No. 29 at 4.) The petitioner implies that the R&R was sloppy, not directly applying the *Strickland* and Section 2254 standards or directly confronting the conclusions reached by the appeals court. (*Id.* at 4-5.) The petitioner also argues that the R&R ignores the import of the mistrial when considering the strength of the proof in this case and ignores the petitioner's testimony at the evidentiary hearing that there were sufficient funds for another expert. (*Id.* at 5.)

In response to all of this, the respondent reiterates that Seibel's testimony at the evidentiary hearing was that he noticed a potential irregularity of concern (although no tear) at the "six o'clock" position, and that, even in the absence of any abnormalities, he could not disprove the oral history given by the victim. (Docket No. 37 at 3-4.) Because Seibel's testimony "did not call into question the fact of sexual abuse," the respondent argues, there is no basis for *habeas* relief on ineffective assistance of counsel grounds, especially considering the deference that the court owes to counsel's decisions under the *Strickland* standard and to the decisions of the state court under Section 2254. (Id. at 5-7.)

The petitioner has an exceedingly high burden at this stage. The Supreme Court has stated that "surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). And, when a Section 2254 petitioner attempts to argue that a state court's application

---

assistance. *Id.* At the district court level, the court focused on the fact that defense counsel failed to make any investigation into the medical testimony or retain any experts, which amounted to deficient performance and, in a close, credibility-driven case, prejudice. *Byrd v. Trombley*, 580 F. Supp.2d 542, 557-60 (E.D. Mich. 2008). Here, Wilks retained experts and specifically challenged medical findings, including the notion that someone of the petitioner's "size" could have engaged in the conduct alleged.

of *Strickland* was unreasonable, the petitioner faces two "highly deferential" standards, which, when applied "in tandem," create a "doubly" high bar.  *Harrington*, 131 S.Ct. at 788.  Indeed, under Section 2254 review, "the question is whether there is any reasonable argument" that counsel satisfied *Strickland*.  *Id.*

The simplest and clearest demonstration that the petitioner has not met that exceptionally high burden is to consider the prejudice prong of the test.[3]  *Strickland*, 466 U.S. at 697 (there is no requirement to consider both elements if the petitioner's claim clearly fails on one element). Important to note is the fact that Rosof conducted a physical examination of the victim, and Seibel's testimony was based exclusively upon the viewing of slides or photos made by Rosof during the course of her physical examination of the victim.  She testified that the abnormality in the hymen that she found caused her to more closely examine the area at "six o'clock" and that she found the absence of hymen in that area.  (Docket No. 15 Ex. 18 at 407-412.)  Although she testified that her physical examination was consistent with penetration, she candidly admitted that she could not say what penetrated the victim's vagina, when it was penetrated, how many times it had been penetrated, or if her examination revealed that the defendant had been having weekly sex with the victim between the ages of 6 and 10.  (*Id.* at  396)

Seibel's testimony is not all that different.  He testified that there was an abnormality "in

---

[3]The petitioner maintains that the state appeals court ruling rested solely on the prejudice ground and that deficient performance has been established on collateral review.  (Docket No. 30 at 4.)  However, in the appeals court opinion, the court states, "we conclude that the petitioner failed to establish that trial counsel either was ineffective in not presenting this testimony at trial or that the petitioner was prejudiced by the fact this did not occur."  (Docket No. 1 Ex. 3 at 11-12.)  The court reads this statement as potentially amounting to a finding against the petitioner on both prongs of *Strickland*, although there was little substantive analysis of deficient performance in the appeals court's opinion.

the six o'clock position" in the photos and that, therefore, he would have investigated further (exactly what Rosof did). (Docket No. 15 Ex. 13 at 41.) Although he testified that Rosof's examination was "equivocal" and that he could not say "one way or another based on the physical examination alone" whether or not there was penetration (*Id.* at 52-53), Seibel was drawing these conclusions from the photos made by Rosof during her physical examination of the victim; Seibel did not do a physical examination of the victim himself. Seibel conceded, under cross-examination by the State, that the hands-on examination is very important and that there are limitations to the conclusions one can draw simply from photographs. (*Id.* at 66-68.) Most importantly, Seibel conceded that, given the history provided by the child victim, coupled with the photographs of the examination, he would have agreed with the diagnosis of sexual abuse, had he been called to testify at the trial. (*Id.* at 64-65.)

Also, Seibel would have been unable to challenge any of the other testimony in the record that pointed to the defendant's guilt, including the victim's detailed testimony, which included an awareness of the petitioner's large penis and detailed the pain of intercourse, the petitioner's ejaculations and her bleeding following sexual assaults. (Docket No. 19 Ex. 20 at 607-619.) Moreover, aside from Rosof's testimony describing an absence of hymen at the "six o'clock position," there was the testimony of daycare workers Louise Head and Cassandra Dowden, which recounted that the victim (1) was exceptionally shy and depressed throughout her years at daycare (consistent with the time of the alleged abuse), (2) was treated poorly by her parents, and (3) ultimately described the abuse to them. (Docket No. 19 Ex. 18 at 428 -460.)

In light of all this, while the appeals court could have offered a more detailed analysis, that

court's conclusion that Seibel's testimony would not have changed the outcome is not one with which all "fair minded" jurists would disagree. Seibel's testimony might have weakened one aspect of one witness's testimony, but it would not have undermined the compelling testimony of the victim or the daycare workers, and it would have only reinforced the notion that there was some sort of irregularity with her hymen, which was not inconsistent with abuse. The court thus finds that the Magistrate Judge was correct in recommending that this claim likewise be dismissed.[4]

In light of the discussion above and the trial court's analysis following the evidentiary hearing in the state collateral review proceedings, the court, however, finds that the petitioner has made a "substantial showing" of a denial of a constitutional right, and, therefore, is entitled to a certificate of appealability on the issue of whether he was denied effective assistance of counsel with regard to the expert testimony issue. See 28 U.S.C. § 2253(c)(2); Rules Governing Section 2254 proceedings – Rule 11.

## CONCLUSION

The petitioner's objections to the R&R will be overruled, and this case will be dismissed, with a certificate of appealability to issue on one claim of ineffective assistance of counsel.

---

[4]The petitioner repeatedly objects that the Magistrate Judge did not afford him an evidentiary hearing prior to recommending dismissal. (Docket No. 29 at 3-4.) Under the Rules Governing Section 2254 proceedings, the Magistrate Judge is entitled to make an assessment, upon considering the entire record, whether an evidentiary hearing "is warranted." Rules 8, 10. The Magistrate Judge concluded that such a hearing was not necessary, and the court agrees. (Docket No. 28 at 4.) Particularly in light of the Supreme Court's recent ruling in *Cullen* (discussed herein) that this court is limited to considering the evidence as it appeared before the state court, there appears to be no reason to conduct an evidentiary hearing to resolve what is, essentially, a legal issue – that is, whether the state court appropriately applied *Strickland* to the facts of this case based on the record that was before that court.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge